UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONI PHILLIPS,

        Plaintiff,                      Case No. 12-cv-15482

                                            Paul D. Borman
                                            United States District Judge

v.

NCO FINANCIAL SYSTEMS, INC.,

        Defendant.
_____/

<u>OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 16) AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 21) AND (3) DISMISSING THE ACTION</u>

        Before the Court are the parties' cross motions for summary judgment. (ECF Nos. 16, 21.) Responses have been filed (ECF Nos. 19, 25) and Defendant filed a reply (ECF No. 24.) The Court held a hearing on March 12, 2014. For the reasons that follow, the Court GRANTS Defendant's motion, DENIES Plaintiff's motion and DISMISSES the case with prejudice.

**INTRODUCTION**

        Plaintiff claims that Defendant NCO Financial Systems, Inc. ("NCO") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq, (the "FDCPA") and the Michigan Occupational Code, Mich. Comp. Laws § 339.901 et seq. (the "MOC") by falsely representing that it would validate a debt it was attempting to collect from Plaintiff and failing subsequently to provide validation of that debt.[1] The debt allegedly was created in connection with medical bills Plaintiff

---

[1] Plaintiff stipulated to dismiss Count III of the Complaint, the Michigan Collection Practices Act, Mich. Comp. Laws § 445.251 ("MCPA") claim.

1

incurred as the result of a November 16, 2007 car accident. Plaintiff has failed to create a genuine issue of material fact that NCO violated either the FDCPA or the MOC.

**I.     BACKGROUND**

Plaintiff claims that she first became aware of the debts alleged to be owed in this case when she pulled her credit report sometime in late 2010. (Pl.'s Mot. Ex. A, August 14, 2013 Deposition of Loni Phillips 17; Pl.'s Mot. Ex. F, filed under seal, Plaintiff's Credit Report.) Plaintiff claims that she called NCO (not one of the credit bureaus) in October, 2010, to inquire about the three alleged debts and was told that NCO could not disclose any information over the phone other than the account numbers assigned to each of the three debts and the amounts owed on each debt. *Id.* at 18, 20. Plaintiff reports that NCO told her that they could not give her any information regarding the creditors whose debts NCO was collecting. *Id.* at 18.

On March 27, 2008, NCO had mailed Plaintiff a collection notice pertaining to the three alleged debts from the hospital. (Pl.'s Mot. Ex. B, March 27, 2008 Collection Notice.) The notice was mailed to an address, 220 Madison Ave., Mount Clemens, Michigan, that Plaintiff had given the hospital when she was admitted following the November 16, 2007 car accident. *Id.* at 31. According to Plaintiff, she only stayed at this address, which was the home of a friend of hers, for a brief period from late October, 2007 until the date of the accident on November 16, 2007, and slept on the couch because she "was fighting with her mother." *Id.* at 9. The Notice indicated three separate account numbers, all for the "IPC The Hospitalists" facility, for services rendered on November 17, 18 and 19 in the amounts of $393, $201 and 217, respectively. (Pl.'s Mot. Ex. B, March 27, 2008 Notice p. 2). A similar notice was sent on April 27, 2008. (Pl.'s Mot. Ex. C.) A separate notice was sent on February 11, 2009, listing just the total amount owed, $811. (Pl.'s Mot.

2

Ex. D.) All notices were sent to the 220 Madison Avenue address that Plaintiff had given at the hospital.

NCO records confirm the mailing of the March 27, 2008 and April 27, 2008 collection notices and demonstrate that neither notice was returned to NCO as undeliverable, which would have indicated to NCO that the address provided by the creditor was incorrect. (Def.'s Mot. Ex. 4, October 31, 2013 Affidavit of Edward Schreibman, ¶ 12.) NCO records indicate that the February 11, 2009 Notice was returned to NCO as undeliverable with no forwarding address. (Pl.'s Mot. Ex. E, Def.'s Answers to Interrogs. 2-3.) On May 27, 2008, NCO for the first time reported to consumer reporting agencies Experian and Trans Union the Plaintiff's debts on her accounts with Inpatient Consultants of North Hollywood, California ("ICNH"). (Schreiberman Aff. ¶ 13.) On or about June 3, 2009, NCO closed the three accounts as active but kept them in NCO's inventory as "Cancel Keep" accounts which meant that they were inactive in NCO's inventory but could be credit-reported again at a later date. *Id.* ¶ 14. NCO again reported these three debts to Experian and Trans Union on November 11, 2010 for the last time. *Id.* ¶ 15.

Nothing further transpired at NCO with respect to Plaintiff's ICNH accounts until March 8, 2011, when NCO received a call from Plaintiff to check on the status of her debts, stating to the NCO representative that she thought her insurance company was supposed to pay the bills and never disputing that she owed the debts. *Id.* ¶ 16-17. NCO denies Plaintiff's claim that she called NCO on October 10, 2010, as NCO's phone and computer systems would have registered such a call and no such call appears on NCO records. *Id.* ¶ 20. NCO's records reflect that Plaintiff called NCO on March 23, 2011 inquiring about her accounts. *Id.* ¶ 18.

Over a year later, on May 7, 2012, Plaintiff's counsel sent a request for validation of debt

3

to NCO on behalf of Plaintiff, Loni Maher, 22230 Winshall, St. Clair Shores, MI 48081, relating to "MED1 02 Inpatient Consultants, Account 3237****". (Pl.'s Mot. Ex. H, May 7, 2012 from Nitzkin to NCO.) NCO records confirm receipt of this letter on May 14, 2012. (Schreibman Aff. ¶ 21.) The validation of debt letter indicated that it was sent pursuant to the FDCPA and that all further communications regarding the accounts should be directed to Mr. Nitzkin, not to Plaintiff. (Pl.'s Mot. Ex. H.) NCO records reflect that on May 17, 2012, following receipt of the May 7, 2012 letter from Nitzkin, which referred to a single account identified by a single partial account number, NCO requested deletion of this trade line account from Experian and Trans Union. (Schreibman Aff. ¶ 22.)

On May 29, 2012, because the underlying debt involved medical services that were provided to the Plaintiff, NCO sent Mr. Nitzkin's office a request for a signed authorization to release medical information to his office by Loni Maher, as NCO was required to do under the Health Insurance Portability and Accountability Act ("HIPPA"). (Pl.'s Mot. Ex. I, May 29, 2012 Letter to Nitzkin.) NCO confirmed sending this letter, which is standard operating procedure whenever a third party requests information regarding the medical accounts of a consumer on which NCO is attempting to collect a debt. (Schreibman Aff. ¶ 23.) This letter thanked Nitzkin for "the recent inquiry," but did not contain any information regarding the alleged debts or the amounts owed, and did not refer to the request for validation. The letter did bear the generic legend at the bottom of the letter that: "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector." *Id*. Ex. 3.

On July 26, 2012, Nitzkin returned a signed HIPPA release to NCO. (Pl.'s Mot. Ex. H, July 26, 2012 Letter with HIPPA Release Form.) NCO confirms receipt of this signed HIPPA release.

4

(Schreibman Aff. ¶ 24.) NCO records reflect that on December 19, 2012, following NCO's receipt of the summons and complaint in this case, as part of its standard operating procedures, NCO requested Experian and Trans Union to delete the NCO's trade line for the two remaining ICNH accounts. *Id*. ¶ 25.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely,

where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 759 (6th Cir. 2010).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible

at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

"In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)). "Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party." *Id*. (alteration in original) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) and *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). "For cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Spectrum Health*, 410 F.3d at 309 (internal quotation marks and citation omitted). "'For cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'" *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

**III.    ANALYSIS**

The Sixth Circuit has dictated that claimed violations of the FDCPA must be analyzed under a "least sophisticated consumer" standard. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th

Cir. 1992). The FDCPA requires collection agencies to provide written notice to a consumer that discloses, among other things, the name of the creditor and the amount owed. See 15 U.S.C. § 1692g(a). Specifically, this provision states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This provision has consistently been interpreted as requiring only that notice be *sent*, not that a debt collector ensure that the notice is *received*:

> As the courts have observed, this provision "requires only that a Notice be 'sent' by a debt collector," and the agency need not "establish actual receipt by the debtor" to satisfy the statutory requirement of notice. *Mahon v. Credit Bureau of Placer County Inc*. ., 171 F.3d 1197, 1201 (9th Cir. 1999); *see also Crain v. Pinnacle Fin. Group, Inc*., No. 07–12075, 2007 WL 3408540, at *3 (E.D. Mich. Nov.14, 2007) ("Denial of receipt . . . is irrelevant for purposes of the FDCPA."); *Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 785–86 (N.D. Ohio 2006). Once this initial notice is sent, the debtor is given a 30–day opportunity to dispute the validity of the debt in writing, and such a written objection requires the debt collector to suspend its collection efforts until it produces verification of the debt. See 15 U.S.C. § 1692g(b). If the debtor does not dispute the debt within this 30–day period, however, the debt is presumed to be valid and verification is not required from the debt collector. See 15 U.S.C. § 1692(a)(3); *see also Mahon*, 171 F.3d at 1202–03; *Crain*, 2007 WL 3408540, at *4.

*Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, at *4 (E.D. Mich. Sept. 30 2008).

Plaintiff denies receiving any collection notices from NCO or any other correspondence regarding the ICNH accounts. There is no dispute that 220 Madison Street is the address that Plaintiff gave to ICNH when she was admitted to the hospital following her November 16, 2008 accident. (Pl.'s Dep. 10-11.) NCO mailed the March 27, 2008 and the April 27, 2008 written collection notices to this address, and neither notice was returned as undeliverable. (Schreiberman Aff. ¶ 12; Pl.'s Mot. Ex. E, Def.'s Answers to Interrogs. 2-3.) If an original collection notice is mailed and not returned as undeliverable, there is a presumption that the notice was received. *See Johnson v. Midland Credit Mgt. Inc.*, No. 05-cv-1094, 2006 WL 2473004, at *11-12 (N.D. Ohio Aug. 24, 2006) (holding that because the FDCPA requires only that notice be sent to the debtor, and contains no language indicating that it must be received, a collection notice that is not returned as undeliverable based upon the business practices of the collection agency is presumed to have been received). The debtor may rebut the presumption of delivery by demonstrating that the notice was sent to the wrong address and returned as undeliverable. *Id.* at *13. In such a case, the debt collector is required to take "additional action" to "send a notice reasonably calculated to reach the consumer." *Id.* "This additional obligation only applies when the debt collector is aware the first notice was not deliverable, e.g., when the actual notice is returned to the debt collector by the Post Office." *Id. See also Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) ("[E]ven if letter subsequent to the [first notice] had been returned, without any evidence that the [first notice] was returned, the inference would be that it was not returned.").

In this case, it is undisputed that the March 27, 2008 and April 27, 2008 collection notices were sent to Plaintiff at the 220 Madison Street address that Plaintiff concedes she gave to the INCH

9

as her valid address. It is undisputed that neither of these notices was returned to NCO as undeliverable. (Pl.'s Mot. Ex. E, Defendant's Answers to Interrogatories 2.) Thus, after the first notice was sent and not returned as undeliverable, NCO had fulfilled its obligations under the FDCPA. Even if the third collection notice sent on February 11, 2009 was returned as undeliverable, *see id*. at 3, this did not create an obligation on the part of NCO to take additional steps to reach the Plaintiff given that they could rightfully presume that Plaintiff received the March 27 and April 27 notices that undisputedly were not returned to NCO as undeliverable.

The Court concludes that the March 27, 2008 collection notice was sent as required by § 1692g(a)(3). The Plaintiff had thirty days from the date she would have received the notice to request verification of the debt. The evidence is undisputed that Plaintiff did not request validation of the debt within thirty days of receipt of the March 27, 2008 notice, first mailing a request for validation on or about May 7, 2012, over four years after NCO sent its initial collection notice. Plaintiff's late request "did not trigger any obligation on the part of [NCO] to verify the debt." *Mahon*, 171 F.3d at 1203. NCO was entitled to attempt to collect the debt following the expiration of the 30 day period.

If a debt collector ceases collection activity after receiving a request for validation of debt, it is not obligated to provide the debt validation. *See Jang v. A.M. Miller and Assoc.*, 122 F.3d 480, 483 (7th Cir. 1997) (noting that debt collectors have two options when they receive a request for validation of a debt: "They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.") (Citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992)) (holding that in response to a request for validation the debt collector "did follow the guidelines of 15 U.S.C. § 1692g(b) by ceasing and desisting from

collection of the debt. Because defendant ceased collection activities, defendant was not obligated to send a separate validation of the debt to plaintiff.").

In this case, NCO stopped collection activities on Plaintiff's accounts on June 3, 2009, when they placed the accounts in a "Cancel Keep" status. NCO did credit report these accounts again on November 11, 2010, but did not send additional collection notices on the accounts. In fact no activity is reported on Plaintiff's ICNH accounts until Plaintiff placed a call to NCO on March 8, 2011, inquiring about the accounts but not disputing the debts. Plaintiff called NCO again on March 23, 2011, but never asked for a debt validation and never disputed the debts. NCO heard nothing else from Plaintiff, and took no further action on her accounts, until May 14, 2012, when NCO received the May 7, 2012 letter from attorney Nitzkin seeking validation of one of the account debts from ICNH. In response, NCO sent the HIPPA waiver request form for Plaintiff to execute and return to permit NCO to release information regarding Plaintiff's medical accounts to Nitzkin. After receiving Plaintiff's signed waiver on or about July 26, 2012, NCO ceased collection efforts on all three of Plaintiff's accounts.

The Court concludes that the May 29, 2012 letter to Nitzkin requesting that Plaintiff sign and return a HIPPA waiver was not a communication regarding a debt and was not a statement promising validation of a debt. Plaintiff characterizes this letter requesting a HIPPA waiver as a "promise" by NCO to provide validation of the debt if Plaintiff returned a signed waiver, which Plaintiff did. Plaintiff argues that NCO violated 15 U.S.C. § 1692e(10) by falsely representing that it would validate the debt upon receipt of a signed waiver and failing to "do as it promised" and validate the debt when it received the HIPPA waiver. (Pl.'s Mot. 5-6.)

First, it is clear that at this point, NCO had no obligation whatsoever to provide validation

11

of the debt, having sent collection notices in 2009 to which Plaintiff had 30 days to respond and never responded. In any event, the HIPPA letter did not mention Plaintiff's accounts with ICNH and merely informed Nitzkin that NCO needed a signed HIPPA waiver in order to be able to communicate any information to Nitzkin. In fact, the language was decidedly obtuse and gave no information whatsoever regarding the specific debts at issue or about any efforts by NCO to collect those debts. The letter did contain the boilerplate statement at the bottom of the page that the letter was "a communication from a debt collector," but this did not transform the letter into an attempt to collect a debt under the FDCPA. *See Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998) (noting that "the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment"). NCO's generic standard request for a HIPPA waiver was not a demand for payment under the FDCPA or a promise to validate the debt. *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor.")

Further, the Court rejects Plaintiff's argument that NCO had an obligation to have the credit reporting agencies remove the ICNH credit account lines from Plaintiff's credit report. A debt collector does not violate the FDCPA by reporting a debt to a credit reporting agency. 15 U.S.C. § 1692(c)(b) ("... a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.") (Emphasis supplied.) Nor is a debt collector obligated to notify a credit reporting agency that a debt is disputed, or to request that a trade line account be removed from a credit report, if the debt

collector is unaware that the debt is disputed when it first reports the debt to a credit reporting agency. The FTC 1998 Staff Commentary on the FDCPA directly addresses this issue:

> 1. Disputed debt. If a debt collector knows that a debt is disputed by the consumer ... and reports it to a credit bureau, he must report it as disputed.
> 2. Post-report dispute. When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.

FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988). *See also Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). Plaintiff fails to create a genuine issue of material fact regarding NCO's actions in failing to remove the remaining two ICNH trade line accounts from Plaintiff's credit report. These accounts were not disputed when NCO first reported them and in fact were not in dispute when NCO re-reported in November, 2010.

Plaintiff's FDCPA claims completely lack evidentiary or legal support. Plaintiff has failed to create a genuine issue of material fact that NCO violated any provision of the FDCPA. Plaintiff has abandoned her MCPA claim and her MOC claim, which is based on the identical underlying conduct, fails for the same reasons that her FDCPA claim fails. *See Millsap*, 2008 WL 8511691, at *10-11 ("[H]aving found that Defendant is entitled to summary judgment in its favor on Plaintiff's [FDCPA] claims, the Court holds that Defendant is likewise entitled to summary judgment in its favor on Plaintiff's parallel state-law [MOC] claims.").

## IV. CONCLUSION

Accordingly, the Court GRANTS Defendant's motion for summary judgment, DENIES Plaintiff's motion for summary judgment, and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: April 11, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2014.

                                          s/Deborah Tofil
                                          Case Manager